**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-01218-CMA-KMT

McKINLEY MEDICAL, LLC, a Colorado limited liability company,
THE BROE COMPANIES, INC., a Colorado corporation, and
PAT BROE, Individually,

    Plaintiffs,

v.

MEDMARC CASUALTY INSURANCE COMPANY, a Vermont company,

    Defendant;

MEDMARC CASUALTY INSURANCE COMPANY, a Vermont company,

    Third-Party Plaintiff,

v.

DJ ORTHOPEDICS, LLC, a Delaware limited liability company, and
DJO, LLC, a Delaware limited liability company,

    Third-Party Defendants.

---

**ORDER GRANTING THIRD-PARTY DEFENDANT'S PARTIAL MOTION TO DISMISS
AND DENYING MOTION FOR SANCTIONS**

---

    This insurance lawsuit, over which the Court has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), is before the Court on the August 22, 2011 Partial Motion to Dismiss Third-Party Plaintiff's Amended Complaint (Doc. # 53), filed by third-party defendants DJ Orthopedics, LLC and DJO, LLC (collectively "DJO") against third-party plaintiff Medmarc Casualty Insurance Company ("Medmarc"). The Court will also rule on DJO's January 30, 2012 "Motion for Rule 11 Sanctions" (Doc. # 76), because

the arguments asserted by DJO in the partial motion to dismiss form the basis of its Rule 11 motion. For the reasons discussed below, the Court grants the former motion and denies the latter one.

## I. BACKGROUND

### A. THE INSURANCE POLICY

This action arose following a dispute between Medmarc and plaintiff McKinley Medical, LLC ("McKinley"), a medical device manufacturer and distributer of pain pumps and pain pump kits, over an insurance policy (the "McKinley Policy")[1] that McKinley purchased from Medmarc.[2] McKinley purchased the McKinley Policy for the period August 24, 2007, to August 24, 2008, and later extended it by endorsement until November 24, 2008. (Doc. # 40 at 3-4.) The McKinley Policy contains an endorsement entitled "Additional Insured – Vendors" ("Vendors Endorsement"), which states, in part:

> WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to 'bodily injury' or 'property damage' arising out of 'your products' shown in the Schedule which are distributed or sold in the regular course of the vendor's business . . . .

(*Id.* at 4.) The Schedule contained in the Vendors Endorsement shows "all vendors of the named insured" and defines "your products" as "all products of the named insured." (*Id.*) The McKinley Policy also states that Medmarc will defend an indemnitee of its insured, provided that certain conditions, which are not at issue here, obtain. (*Id.*)

---

[1] Although the parties refer to this policy as the "Medmarc Policy," the Court refers to it here as the "McKinley Policy," because McKinley was the named insured. (*See* Doc. # 40-1.)

[2] The details of their dispute, although critical to an ultimate resolution of this action, will only be discussed to the extent necessary to address the instant motions.

According to the McKinley Policy, "payments for defense costs reduce[] the limits of insurance available for settlements or judgments." (*Id.* at 6.)  More specifically, the McKinley Policy includes a "products-completed operations aggregate limit of $10,000,000 and a per occurrence limit of $10,000,000" (*id.* at 3) and provides that Medmarc's "right and duty to defend end when [Medmarc has] used up the applicable limit of insurance in the payment of judgments, settlements[,] and defense expenses" (*id.* at 11).

Medmarc subsequently issued a "tail" part of the McKinley Policy, effective November 24, 2008.  (*Id.* at 6.)  According to Medmarc, "[t]he issuance of a tail does not create a second policy.  The terms of the tail are, therefore, identical to those of the policy to which the tail attaches."[3]  (Doc. # 59 at 4.)  As such, the tail coverage "contained the identical 'Additional Insured – Vendors' endorsement and the terms and conditions pertaining to an indemnitee of the insured" that were contained in the McKinley Policy.  (Doc. # 40 at 6.)

---

[3] The Court's understanding is that "tail" coverage "provides insurance for acts, errors, or omissions which meet the policy requirements but allows an unlimited discovery period[,]" so that "the insured would be protected for claims brought after the base policy had expired." *Shumate v. Pac. Ins. Co.*, Nos. 97-4099, 97-4100, 1998 WL 764089, at *2 n.2 (10th Cir. Nov. 2, 1998) (unpublished).  *See also In re Lavigne*, 114 F.3d 379, 382 (2d Cir. 1997) ("Tail coverage is insurance coverage that becomes effective upon the cancellation or termination of a policy.  The coverage applies to all claims that arise during the primary policy period but are not asserted until after the stated policy period expires.").

**B.    DJO'S INVOLVEMENT**

At the time McKinley purchased the McKinley Policy from Medmarc, it was in an agreement with DJO for the distribution of certain McKinley pain pumps.  (*Id.*)  The agreement included the following indemnification provision:

> Each of the parties hereto shall be responsible for its own acts or omissions or alleged acts or omissions . . . and each of the parties shall protect, indemnify, defend and hold harmless the other party and any affiliate of the other party from and against any and all claims, losses, demands, and liabilities, including attorneys' fees and court costs, which may arise therefrom . . . .

(*Id.* at 6-7.)  The agreement also provided that:

> McKinley represents and warrants to DJO that it is currently insured and covenants that during the term of this Agreement it will maintain a comprehensive general liability insurance policy and product liability insurance which is sufficient to adequately protect against the risks which might possibly arise in connection with the transactions contemplated by this Agreement, in an amount of at least $1,000,000 per single claim . . . and an aggregate total of $10,000,000.  Such insurance may be on a claims-made basis, shall name DJO as additional insured, shall be maintained at least one (1) year after the expiration of this Agreement and shall contain a waiver of the right of subrogation.

(*Id.* at 7.)

In 2006, several personal injury lawsuits were filed against McKinley and DJO over damages allegedly caused by medical devices they distributed.  (*Id.*)  In November 2007, DJO began to "tender the personal injury suits to Medmarc seeking a defense and indemnification" under the McKinley Policy.  (*Id.* at 8.)  Medmarc agreed to defend DJO under the McKinley Policy as of November 25, 2008.  (*Id.*)

In March 2009, and at McKinley's request, "Medmarc's underwriting department . . . agreed to delete the Additional Insured – Vendors endorsement contained in the

4

[McKinley] Policy, which provided additional insured status for vendors, including but not limited to DJO." (*Id.* at 9.) However, "[t]he fact that the Vendors Endorsement had been deleted from the [McKinley] Policy was never communicated to the individuals at Medmarc responsible for handling the claims submitted by DJO . . . ." (*Id.*) Accordingly, Medmarc continued to "provid[e] a defense to DJO for the claims presented by DJO to Medmarc after the deletion of the Vendors Endorsement." (*Id.* at 10.) By letter dated December 7, 2010, Medmarc informed DJO that it "was no longer an additional insured under the [McKinley] Policy since the Vendors Endorsement had been deleted from the policy in March 2009." (*Id.*) Thereafter, Medmarc terminated DJO's coverage under the McKinley Policy. (*Id.*)

In February 2011, the McKinley Policy limits were "exhausted by payment of defense costs, settlements[,] and/or judgments." (*Id.*) Medmarc then advised McKinley, and DJO was notified, that the McKinley Policy limits had been exhausted and "Medmarc would not be paying any further defense costs or settlements." (*Id.* at 11.)

**C.   PROCEDURE**

On April 6, 2011, McKinley commenced this action, "alleging that Medmarc improperly accepted DJO's tender of the underlying lawsuits and incurred defense costs under the [McKinley] Policy as a result of defending DJO." (*Id.*) McKinley claims that Medmarc "wrongfully depleted the limits of insurance available to McKinley" through its allegedly improper defense of DJO. (*Id.*)

Thereafter, Medmarc filed a third-party complaint against DJO. (Doc. # 10.) On July 25, 2011, Medmarc amended its third-party complaint (Doc. # 40), seeking:

5

"(1) a declaration that Medmarc no longer has a duty to defend and indemnify DJO for the underlying lawsuits; and (2) reimbursement of the defense costs, settlements[,] and/or judgments paid by Medmarc on behalf of DJO" for the period after Medmarc had agreed to delete the Vendors Endorsement. (Doc. # 59 at 6.) Its reimbursement request is premised on theories of unjust enrichment, restitution, and contribution. (*See* Doc. # 40 at 14-18.) On August 22, 2011, DJO filed the instant partial motion to dismiss for failure to state a claim. (Doc. # 53.) Medmarc filed a response to DJO's motion on October 6, 2011 (Doc. # 59), to which DJO replied on November 8, 2011 (Doc. # 65).

Finally, on January 30, 2012, DJO moved for sanctions against Medmarc under Fed. R. Civ. P. 11. (Doc. # 76.) Medmarc responded on March 6, 2012. (Doc. # 91.)

## II. DISCUSSION

The Court will first address DJO's partial motion to dismiss and will then turn to its Rule 11 motion.

### A.     DJO'S PARTIAL MOTION TO DISMISS

#### 1.     Standard of Review

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is to test "the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). A complaint will survive such a motion only if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). For a motion to dismiss, "[t]he question is whether, if the allegations are true, it is plausible

and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

2. Merits

DJO's partial motion to dismiss asks the Court to dismiss only Medmarc's "Fourth, Fifth, and Sixth claims for relief"—i.e., those for unjust enrichment, restitution, and contribution, respectively. (*See* Docs. ## 53 at 16 and 40 at 14-18.) DJO argues that these claims are: advanced improperly as having been caused by "mistake"; foreclosed due to the anti-subrogation rule; subject to Medmarc's explicit waiver of its right to dispute coverage; and premised on grounds that Medmarc should be estopped

from asserting. The Court agrees with DJO's arguments regarding Medmarc's assertions of "mistake"; therefore, the Court declines to address DJO's three remaining arguments.

Medmarc's unjust enrichment and restitution claims state that Medmarc "agreed with DJO to provide a defense to DJO for claims presented by DJO after the Vendors Endorsement had been deleted in March 2009 pursuant to a mistaken belief that the [McKinley] Policy contained the Vendors Endorsement and without knowledge that the endorsement had been deleted at the request of McKinley." (Doc. # 40 at 14-15, ¶ 67; *id.* at 16, ¶ 75.) The claims further state that "[t]he defense provided to DJO pursuant to the Vendors Endorsement was a mutual mistake since neither Medmarc's claims professionals nor . . . DJO were aware that McKinley had requested and obtained deletion of the Vendors Endorsement in March 2009." (*Id.* at 15, ¶ 70; *id.* at 16, ¶ 78.) In its claim for contribution, Medmarc asserts that, based on McKinley's allegations, "Medmarc and DJO would, at best, be joint tortfeasors or joint obligors and would be jointly or severally liable to reimburse [McKinley] for the dollar amount of the defense costs, settlements[,] and/or judgments which [it] claims were wrongfully made." (*Id.* at 17.)

Under the doctrine of mutual mistake, "[a] party may rescind a contract when, at the time the contract is made, the parties make a mutual mistake about a material fact, the existence of which is a basic assumption of the contract." *Beals v. Tri-B Assocs.*, 644 P.2d 78, 80 (Colo. App. 1982). *See also Cary v. Chevron U.S.A., Inc.*, 867 P.2d 117, 118 (Colo. App. 1993) ("A mutual mistake is one which is reciprocal and common

to both parties to an agreement, and both parties must share the same misconception as to the terms and conditions of the agreement."). *Accord* Restatement (Second) of Contracts § 152 (1981).

In the instant case, Medmarc does not plead facts that could plausibly entitle it to relief under the mutual mistake doctrine. Quite simply, Medmarc does not allege that it shared a misconception with DJO about a material term of the McKinley Policy at the time it was created. Instead, as indicated above, Medmarc asserts that after McKinley asked it to delete the Vendors Endorsement from the McKinley Policy, its claims department and DJO shared a mistaken belief that the McKinley Policy continued to contain the endorsement. Although that assertion might provide a useful way of conceptualizing what occurred as a practical matter, it does not entitle Medmarc to relief under the mutual mistake doctrine.

As DJO asserts, the knowledge of one department in a company is imputed to the company as a whole. *See W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1276 (10th Cir. 2005) ("It is well established that a corporation is chargeable with the knowledge of its agents and employees acting within the scope of their authority.") [4]; *see also State Farm Mut. Auto. Ins. Co. v. Bockhorst*, 453 F.2d 533, 536 (10th Cir. 1972) ("One hand of the company must be charged with what the other hand knows and does."). Accordingly, given Medmarc's admission that it "agreed to delete the Additional Insured – Vendors endorsement" (Doc. # 40 at 9), it cannot obtain

---

[4] Medmarc does not allege that the individuals responsible for handling DJO's claims were acting outside the scope of their authority. Accordingly, the exception for *ultra vires* actions alluded to by the court in *W. Diversified Servs.* is not at issue here.

legal relief by asserting lack of knowledge as to what occurred.  Relatedly, to the extent that Medmarc's description of its actions – as occurring "without knowledge that the endorsement had been deleted" (*id.* at 14, ¶ 67 and 16, ¶ 75) – can be read as a factual allegation, the Court is not required to, and does not, accept it.  *See Anthony Sterling, M.D. v. Provident Life and Accident Ins. Co.*, 519 F. Supp. 2d 1195, 1209 (M.D. Fla. 2007) (when reviewing 12(b)(6) motions, "courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductive therefrom, [but] they need not accept factual claims that are internally inconsistent" (quotation marks and citation omitted)); *Pesci v. I.R.S.*, 67 F. Supp. 2d 1189, 1191-92 (D. Nev. 1999) (same).

Further, the Court is not persuaded by Medmarc's argument that it may be entitled to relief under a "mistake of fact" theory.  Medmarc did not plead such a theory and, as DJO points out, is not permitted to "amend its pleadings through its opposition to the motion to dismiss."  (Doc. # 65 at 3.)  *See, e.g.*, *Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) (citing with approval *Perkins v. Silverstein*, 939 F.2d 463, 470 n.6 (7th Cir. 1991) ("a complaint may not be amended by briefs in opposition to a motion to dismiss")).  *Accord Kearney v. Dimanna*, 195 Fed. Appx. 717, 721 n.2 (10th Cir. 2006) (unpublished) (declining to consider claims not pleaded in complaint and quoting decision for proposition that courts "are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint").

Regardless, Medmarc cites no authority, nor is the Court aware of any, providing relief to a mistaken party in circumstances akin to those presented here.  Rather,

Medmarc cites several cases which are either inapposite or readily distinguishable from the case at hand:

- *Shoels v. Klebold*, 375 F.3d 1054 (10th Cir. 2004). This case, in which the plaintiffs were seeking not to be held to contract terms because their acceptance was predicated on an alleged mistake was, as the 10th Cir. stated in the opinion, "easily resolved by the venerable principle that a unilateral mistake of one party to an agreement is not grounds for rescission." *Id.* at 1066.

- *In re Marriage of Manzo*, 659 P.2d 669 (Colo. 1983). In this dissolution of marriage action, the state supreme court reversed the court of appeals, citing with approval the proposition that "a contract may not be rescinded because one party has made a unilateral mistake as to value unless the other party knew or had reason to know of the error," and finding that the dissolution was "fair, just, and reasonable." *Id* at 672, 675.

- *Skyland Metro. Dist. v. Mountain W. Enter., LLC*, 184 P.3d 106 (Colo. App. 2007). The *Skyland* court rejected the developers' claim that they paid water and sanitation districts under a mistake which rendered their payments involuntary, holding that the alleged mistake was one of law, not of fact. *Id.* at 130.

- *United Bank of Aurora v. Meaux*, 761 P.2d 253 (Colo. App. 1988). In *Meaux*, although restitution was required because payment had been made under mistake of fact, the court emphasized that the payee committed "at least a negligent misrepresentation" and had not "received the money in good faith." *Id.* at 255.

- *Naugle v. O'Connell*, 833 F.2d 1391 (10th Cir. 1987).  In this retiree benefits case, decided under federal law,[5] the court allowed for restitution to the payor despite its mistake of fact in tendering payment to the payee, but the court highlighted that the facts upon which the mistake was based had been "overlooked" by the payor.  *Id.* at 1393.

As the courts in *Shoels* and *In re Marriage of Manzo* noted, a unilateral mistake by one party generally does not excuse performance of an agreement.  *See, e.g.*, *Williams v. M&T Bank*, 09-cv-00369, 2010 WL 4511085, at *5 (D. Colo. Oct. 5, 2010) (unpublished) (citing state law decisions for propositions that "a contract [cannot] be rescinded or avoided because one party made a unilateral mistake concerning a contract term" and "[i]n order to avoid a contract on the ground of mistake, it must be a mutual mistake" (quotation marks and citations omitted)).  Medmarc does not allege that DJO was presented with the fact that the Vendors Endorsement had been deleted but acted contrary to it.[6]  As such, the Court agrees with DJO's assertion that Medmarc's mistake was unilateral.

---

[5] Medmarc's assertion that *Naugle* was a "Colorado law" case is incorrect.  (Doc. # 91 at 7.)  *Naugle* explicitly dealt with "the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. §§ 1001 to 1461[,]" which is self-evidently a federal law.  833 F.2d at 1393.  Moreover, *Naugle* included at least twenty citations to federal cases and not a single citation to Colorado authority.  *See generally id.*

[6] Medmarc's assertion in its response (Doc. # 59 at 14) that "there is an issue of fact as to whether DJO was aware that it was no longer an additional insured" contradicts its prior factual allegation in the Amended Third-Party Complaint (Doc. # 40 at 9, ¶ 39) that DJO "believed that the Vendors Endorsement had not been deleted . . . ."  Accordingly, in light of this factual allegation, the Court will not accept as true Medmarc's later assertion.  *See, e.g.*, *Anthony Sterling, M.D.*, 519 F. Supp. 2d at 1209.

Further, and as previously mentioned, Medmarc's knowledge cannot, as a legal matter, be compartmentalized among its various departments. Accordingly, the *Naugle* court's reason for awarding restitution does not apply to Medmarc. Medmarc did not overlook McKinley's desire to delete the Vendor's Endorsement; to the contrary, Medmarc admits that, in fact, it deleted the provision. Moreover, Medmarc does not allege that DJO acted in bad faith or even negligently. As such, the reasons for the restitution ordered by the court in *Meaux* are inapplicable here.

For the foregoing reasons, the Court concludes that Medmarc has not pleaded facts that could plausibly entitle it to relief under the doctrines of mutual mistake or mistake of fact.

**B.     DJO's RULE 11 MOTION**

DJO also argues that it is entitled to "an award of attorneys' fees and costs" under Fed R. Civ. P. 11 and/or 28 U.S.C. § 1927. (Doc. # 76 at 6.) The reasons it asserts for such an award are best summarized in its partial motion to dismiss:

> There is simply no basis for DJO to bear the burden of Medmarc's mistakes . . . . Indeed, Medmarc has no one to blame but itself for its mishandling of DJO and its coverage. To allow Medmarc to recover from its own insured for Medmarc's own failures . . . runs directly counter to Colorado law and any notion of fairness, rendering Medmarc's claims for monetary relief meritless.

(Doc. # 53 at 16.) Although not an automatic decision, the Court disagrees with DJO, and therefore declines to order sanctions.

"Rule 11 is violated where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify, or reverse the law as it stands." *Harrison v. Luse*,

13

760 F. Supp. 1394, 1399 (D. Colo. 1991).  Conduct challenged under Rule 11 is evaluated according to a standard of objective reasonableness.  *Id.*  Therefore, the Court must determine "whether a reasonable and competent attorney would believe in the merit" of the arguments challenged.  *Greeley Pub. Co. v. Hergert*, 233 F.R.D. 607, 610 (D. Colo. 2006).  However, "Rule 11 sanctions are an extraordinary remedy."  *Id.* at 611.  They are "intended to discourage frivolous litigation, not to punish litigants."  *Id.*  Frivolous means "lacking a legal basis or legal merit; not serious; not reasonably purposeful."  *United States v. Lain*, 640 F.3d 1134, 1137 (10th Cir. 2011) (quotation marks, citation, and alteration omitted).

Sanctions can also be awarded under 28 U.S.C. § 1927, if an attorney "multiplies the proceedings in any case unreasonably and vexatiously."  Vexatious means "without reasonable or probable cause or excuse; harassing; annoying."  *Id.*; *see also Harrison*, 760 F. Supp. at 1400 ("Under this statute [§ 1927], sanctions may be imposed where counsel persists in a position or in prosecution of a claim after it becomes clear that the position or claim is unfounded.").

In the instant case, the basis of DJO's motion appears to stem from a procedural detail not mentioned in the background section above.  After Medmarc submitted its third-party complaint (Doc. # 10), DJO filed a partial motion to dismiss it (Doc. # 27),[7] and served a copy of its Rule 11 motion on Medmarc (*see* Doc. # 76 at 2 n.1).  Medmarc then amended its third-party complaint.  (Doc. # 40.)  However, DJO asserts that "Medmarc's Amendments to its original Third Party Complaint are changes in form,

---

[7] The Court terminated this motion as moot after Medmarc amended its third-party complaint.

not substance . . . ."  (Doc. # 53 at 16.)  After reviewing the record, the Court agrees that Medmarc's amendments do not appear to have altered much, if any, of the substance of its claims.  However, the Court is not persuaded that it was patently clear Medmarc's claims had "absolutely no chance of success."

Regarding Medmarc's claims for unjust enrichment, restitution, and contribution, the theories of mistake upon which the claims were premised fall short of being "not reasonably purposeful" or "harassing."  To be sure, Medmarc's attempt to amend its third-party amended complaint by asserting a new theory of mistake in its response was improper, as noted by the Court, above.  However, its theory of mutual mistake was not entirely unreasonable.  For example, and as also noted above, such a theory provides a useful way of conceptualizing the mistake Medmarc says occurred between its underwriting and claims departments, even though the knowledge of one department is imputed to the company as a whole in the absence of facts supporting application of the *ultra vires* exception.  Further, Medmarc's newly-minted mistake-of-fact theory, which the Court addressed for reasons of judicial economy, contained citations to cases that, while ultimately inapposite, were close enough to the case at bar that their dissimilarities required some explanation and analysis.

Beyond the allegations that Medmarc's assertions of mistake were frivolous and vexatious, DJO's arguments for sanctions lose traction.  Medmarc asserts, and the Court largely agrees that, through its sanctions' motion, "DJO seeks an adjudication on the merits of the legal sufficiency of Medmarc's claims . . . ."  (Doc. # 91 at 6.)  Perhaps most problematically is DJO's assertion that it is entitled to sanctions because

"Medmarc violated Colorado's bad faith law."  (Doc. # 76 at 9 (capitalization deleted).)  This assertion goes beyond the issues called into question at this stage of the litigation and, instead, appears to request the Court's resolution of DJO's third counterclaim against Medmarc for "breach of the implied covenant of good faith and fair dealing" (Doc. # 54 at 32).  (*Compare id.* (asserting that Medmarc committed a "tortious breach of the implied covenant of good faith and fair dealing") *with* Doc. # 76 at 10 (asserting that "[u]nder Colorado law, insurance contracts contain an implied duty of good faith and fair dealing" and arguing that "Medmarc's internal failure to communicate violates Colorado's bad faith law").)  Although Rule 11 "sets a threshold for the factual and legal assertions of a complaint, it is not a broad mechanism for testing the sufficiency of a plaintiff's claims."  *Ross v. Mukasey*, No. 08-cv-00643, 2009 WL 4250124, at *1 (D. Colo. Nov. 24, 2009) (unpublished) (citing with approval 5A Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure § 1336.3 (3d ed. 2009) ("Rule 11 should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits.")).

Further, DJO's arguments with regard to Colorado's anti-subrogation rule and estoppel which, as opposed to the bad faith argument addressed immediately above, were raised in the partial motion to dismiss, require resolution of factual disputes that would be improper for the Court to engage in here.  *See id.*  For instance, DJO's assertion that Medmarc should be sanctioned because Colorado's anti-subrogation rule bars its claims for relief necessitates an analysis of whether Medmarc's deletion of the

16

Vendors Endorsement constituted a lapse in coverage, which would preclude the anti-subrogation rule from acting as a complete bar. A similar analysis would be necessary in deciding DJO's assertion that Medmarc should be sanctioned because it is estopped from disputing coverage.

Accordingly, the Court concludes that Medmarc's actions have not been sufficiently frivolous or vexatious to trigger sanctions.[8] Although DJO did not prevail on this motion, the Court further concludes that Medmarc's request for its "reasonable expenses, including attorneys' fees," incurred in defending this motion is unwarranted. (*See* Doc. # 91 at 6.)

### III. CONCLUSION

For the foregoing reasons, the Court ORDERS that third-party defendant DJO's "Partial Motion to Dismiss Third-Party Plaintiff's Amended Complaint" (Doc. # 53) is GRANTED. Accordingly, third-party plaintiff Medmarc's fourth, fifth, and sixth causes of action – for unjust enrichment, restitution, and contribution, respectively – are DISMISSED. It is

FURTHER ORDERED that DJO's "Motion for Rule 11 Sanctions" (Doc. # 76) is DENIED.

DATED: March  23 , 2012

BY THE COURT:

*[signature: Christine M. Arguello]*

CHRISTINE M. ARGUELLO
United States District Judge

---

[8] However, should Medmarc attempt to reassert these claims in an amended pleading, without significant factual development, the Court will consider more favorably a motion for sanctions.